# PHŒNIX INSURANCE COMPANY v. PUBLIC PARKS AMUSEMENT COMPANY.

## Opinion delivered November 14, 1896.

FIRE INSURANCE—VALIDITY OF CONDITION.—A provision in a policy of fire insurance that if the interest of the assured in the property be other than an unconditional and exclusive ownership it must be notified to the company, and be so expressed in the written part of the policy, and that otherwise the policy shall be void, is reasonable and valid; and an acceptance of the policy by the assured is an affirmance that its interest in the property insured is an unconditional and exclusive ownership.

SAME—TITLE OF ASSURED.—A conditional vendee of a chattel, the title of which is reserved in the vendor until payment of the purchase money, is not, until such payment is made, the unconditional and exclusive owner thereof, within the meaning of a policy of insurance stipulating that if the interest of the assured be other than an unconditional and exclusive ownership it must be notified to the company and expressed in the policy, and otherwise the policy shall be void; and the fact that at the time of its destruction the property was in the vendee's possession under a retaining bond given by him in a replevin suit brought by the vendor to recover the property does not alter the character of his holding.

SAME—WAIVER OF STIPULATION.—Where a policy of insurance provides that it shall be void if the interest of the assured be other than unconditional ownership unless such fact be expressed in the policy, the necessity for a statement that the insured property was held under a conditional sale is not obviated by making the loss payable to a mortgagee.

POLICY—INDIVISIBILITY.—Where a contract of insurance is entire and indivisible, the consideration and risk being single, any breach which renders the policy void as to any part of the property renders it void as to all of the property; and the fact that separate amounts of insurance in a policy are apportioned to separate items or classes of property does not make the policy divisible.

INSURANCE AGENT—AUTHORITY.—Insurance agents, who are entrusted with blank policies signed by the principal officers of the insurer, with power and authority to solicit insurance, and, when obtained, to fill the blanks in the policies, receive the premium, and countersign and issue the policies, have the implied authority to waive a condition in a policy against incumbrance.

SAME—WAIVER OF FORFEITURE.—An insurance agent, authorized to waive a forfeiture in a policy, may do so orally, though the policy provides that the waiver must be indorsed on the policy.

CONDITION AGAINST INCUMBRANCE—WAIVER.—A condition against incumbrances in a policy of insurance is waived by the acts of agents of the insurer who, having authority to waive conditions, and knowing that the property was incumbered, attach to the policy permits for additional concurrent insurance, upon which additional policies are issued.

EVIDENCE—MEMORANDUM.—An inventory of the chattels insured, prepared by. the assured before the fire, is not admissible as independent evidence to prove their value, but it may be used to refresh the memory of a witness, and if upon examining it he is unable to remember what it contains, but knows its contents to be true, he may so testify, and read the same to the jury.

INTEREST—WHEN RECOVERABLE.—Interest is recoverable on a policy of insurance from the. time the loss is made payable.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Charles D. Greaves* and *Wood & Henderson* for appellant.

The Public Parks Amusement Company was not the unconditional and exclusive owner of the property, and the policy was void. 123 Ind. 172; 70 Md. 538; 34 Pac. 140; 86 N. Y. 423; 57 How. Pr. 222; 5 Bush, 186; 61 N. W. 722. A conditional sale passes no title until the conditions are performed. 47 Ark. 363; 48 *id.* 160; *ib.* 273; 49 *id.* 63; 52 *id.* 164; 54 *id.* 478. The representations and stipulations were material. They were warranties. Cases *supra.* The fact that a bond was given in the suit of the Embree-McLean Carriage-Company does not change the legal status of the parties as to the ownership. If the carriage company won the suit, it would have the right to recover the specific property, regardless of the bond. 37 Ark. 544; 54 *id.* 121. An insurable interest is not sufficient; there must be ownership. 86 Ala. 189; 27 Atl. 1077; 22 N. E. 229; 96 Pa. St. 37; 36 La. An. 600; 9 So.

327; 17 *id.* 326; 68 Mo. 127; 2 Pet. 25; 87 N. Y. 69; 41 Am. Rep. 359; 32 Fed. Rep. 640. The contract was entire, and, if void as to any portion of the property insured, was void as to all. 52 Ark. 257; 127 Mass. 555; 69 Iowa, 202; 111 Ind. 90; 118 N. Y. 518; 8 L. R. A. 834, and note; 4 *id.* 759; 5 Cent. Rep. 484; 51 N. W. 555. By giving the mortgage of December 17, 1891, the policy was forfeited, and there was no waiver by appellant or any authorized agent. 85 N. Y. 278, 283; 49 Mo. App. 423; May on Ins. sec. 137A; *ib.* (3d Ed.), sec. 126, and note 3, p. 220; 117 U. S. 519; 95 U. S. 329; 96 *id.* 240; 2 Wood, Fire Ins. 841–846; 8 West. Rep. 815; 66 N. Y. 274; 33 N. J. L. 487. A local agent cannot waive conditions in a policy. 60 Ark. 532; 144 Mass. 43; 54 Ark. 78; 53 Vt. 418; 13 B. Mon. 400; 11 Kas. 533; 13 Gray, 79; 79 Pa. 475; 4 Abb. (N. Y.) App. 315; 9 Allen, 231; 2 Dak. 114; 73 N. Y. 5. There is no presumption of an agent's authority. It must be shown. 2 Wood, Fire Ins. 860; *ib.* 870, 888; 54 Ark. 78. The policy provided that no officer * * * could waive any of its terms or conditions, unless * * in writing, etc. This is valid, and prevents an oral waiver by any agent. 20 L. R. A. 267; 54 N. W. 18; 55 Cal. 408; 80 Hun, 251; 6 Gray, 169; 11 Cush. 265. The waiver must be in writing. 85 Ind. 362; 108 *id.* 270; 144 Mass. 43; 66 Cal. 6; 67 *id.* 621; 1 Allen, 294; 4 *id.* 116; 3 Gray, 583; 23 Wend. 260; 16 Pet. 495; 160 Pa. St. 229; 65 Hun, 621; 80 Wis. 393; 51 N. W. 455; 52 *id.* 754.

The inventory made for Reinman & Simon was improperly admitted in evidence. It was error also to allow the inventory and other papers to be sent to the jury room. 1 Cent. Rep. 599; 110 Pa. St. 548. Interest should only have been computed from the day the policy was payable, i. e., sixty days after receipt of proof of loss.

*Geo. G. Latta* and *E. W. Rector* for appellees.

The policy is not void because some of the property covered by was held under a conditional sale. No *formal* or *written application* was made, and hence no *warranty* as to title, and no concealment. An *insurable* interest is all that is required. 1 May on Ins. sec. 284, 285, 288, 287 C; 1 Wood on Ins. sec. 88; 29 Conn. 10; 36 Md. 102; 11 Am. Rep. 169; 2 Michigan Lawyer, 201; 26 Gratt. 871; 27 Am. Rep. 582; 95 U. S. 242; 31 Am. Rep. 741; 18 Mo. 262; 59 Am. Dec. 299; 117 Penn. St. 686; 70 Wis. 196; 5 Am. St. Rep. 159; 67 Miss. 620; 19 Am. St. Rep. 326; 52 Miss. 231; 132 Pa. St. 236; 145 *id.* 346; 93 Mich. 184; 32 Am. St. Rep. 497; 46 Mich. 15; 66 *id.* 98; 53 *id.* 306; 18 Am. Rep. 681; 95 U. S. 673. Only a stern legal necessity will induce such a construction as will nullify a policy. Courts will construe a contract of insurance liberally, so as to give it effect, rather than make it void. 2 Pet. 25; 18 Am. Rep. 681; 95 U. S. 673; 1 So. Dak. 342; 19 Am. St. Rep. 596; 47 W. W. 288; 53 Ark. 494. If there was a breach of warranty, it was waived by the adjustment of the case. 49 Wis. 89; 35 Am. Rep. 772; 62 N. Y. 85; 53 *id.* 144; 7 La. An. 218; 5 Rep. 490; 50 Ill. 111; 27 Barb. 354; 2 East, 469; Angell, Ins. sec. 409; May, Ins. sec. 575; 52 Ark. 11; 53 *id.* 215; 53 *id.* 494. This is a different case from 52 Ark. 257, and the doctrine in that case should not be applied to this. The court should be guided by a respect to general convenience and equity, bearing in mind that the law leans strongly against forfeitures. The contract should be held separable. 27 Am. Rep. 584; 49 Ohio St. 10; 34 *id.* 365. In answer to the contention that the policy was forfeited by the mortgage of December 17, 1891, we submit (1) that *lawful notice* was given of same, and (2) that the provision requiring *written notice* and the company's assent was waived. 2 Wood, Ins. sec.

430, 392; 53 Ark. 494. The inventory facilitated plaintiff in identifying and valuing the property destroyed and was admissible. The jury were simply allowed to refresh their memory from the papers sent to their room, and there was no abuse of discretion by the court, and no prejudice. Plaintiff was entitled ·to interest from *date of the loss.* 22 Atl. Rep. 655.

BATTLE, J. The Public Parks Amusement Company and Edward Butler sued the Phœnix Insurance Company on a policy of insurance. The pleadings in the action, so far as it is necessary to set them out in this opinion, are as follows: It is alleged in the complaint that the Public Parks Amusement Company was a corporation, and on the 14th day of November, 1891, was engaged in the general livery business in the city of Hot' Springs, in ·this state, and was the owner of forty horses, of hacks, carriages, buggies, carts, wagons, and . other property, which were used in their livery business. On the 12th of September, 1891, it executed a deed of trust to John Loughran, and thereby conveyed to. him, as trustee, for the use and benefit of Edward Butler, the said horses, hacks, buggies, carts, wagons, and other property, to secure the payment of $10,346 which it owed to Butler, and on the 17th day of December, 1891, conveyed the same property by a deed of trust to the same trustee to secure the payment of $3,000 to the same beneficiary; and no part of these sums have been paid. On the 14th day of November, 1891, the defendant, in consideration of $87.50, executed to the Public Parks Amusement Company a policy of insurance for one year, and thereby agreed to indemnify said company against ·loss or damage by fire of or to the aforesaid property, to an amount not exceeding the actual value thereof, and in no event the sum of $2,500; loss, if any, payable to Edward Butler, as his interest might appear. On the

17th of May, 1892, said property was totally destroyed by fire. That the defendant is indebted to the plaintiff company, by reason of the foregoing facts, for the use and benefit of Edward Butler, in the sum of $2,500, for which it asked judgment.

The policy was filed with and made a part of the complaint. So much of it as we deem necessary to set out in this opinion is in the words and figures following: "The Phœnix Insurance Company of Brooklyn, N. Y., in consideration of the conditions, limitations and requirements of this policy hereinafter mentioned, and of the receipt by said company of $87.50, will indemnify Public Parks and Amusement Company against loss or damage by fire, to the following specified or located property, only to an amount not exceeding the actual cash value of the property herein described, at the time of such loss, and in no event to exceed twenty-five hundred dollars, as follows: "$1,250 on their forty horses, not to exceed $125 on any one horse in case of loss; $875 on their rolling stock and vehicles of all kinds, including hacks, carriages, buggies, carts, and wagons; $375 on their harness, saddles, bridles, whips, blankets, robes, office and stable furniture, and fixtures of all kinds, including feed on hand,—all while contained in the one-story frame, metal and shingle roof building, known as the "Metropolitan Livery Stables.   *   *   *   *   * Other concurrent insurance permitted, subject to three-quarter loss clause. Loss, if any, payable to Edward Butler, as his interest may appear.   *   *   *   *Jf the interest of the assured in the property be other than an unconditional, exclusive ownership; and, if it be real property, if it be other than an absolute fee simple title, or if any other person or persons have any interest whatever in the property described, whether it be real estate or personal property, or if the building insured by this policy stands on leased*

ground, *or if there be a mortgage or other incum-brance thereon,* building or contents *or any part thereof, whether inquired about or not, it must be so notified to the company, and be so expressed in the written part of this policy; otherwise, the policy shall be void.* When the property insured shall be sold or incumbered or otherwise disposed of, written notice shall be given to the company of such sale or incumbrance or disposal, and its assent thereto endorsed hereon; otherwise, this insurance on said property shall immediately terminate. * * * * * * That no agent or other representative of this company (excepting only the principal officers of the company at New York and its general agent at Chicago) shall have any power to waive or in any manner to modify any provision or condition of this policy, except such as, by the terms of this policy, may be subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no agent or representative, except as above mentioned, shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written on or attached hereto, and unless so signed as aforesaid."

$13,000 of total concurrent insurance was permitted by the insurance company as follows: $6,500 on horses; $5,000 on vehicles, and $1,500 on horses, saddles, etc.

Nothing was stated or expressed in the policy showing that the insured had any interest in the property described other than the unconditional and exclusive ownership, or that any other person had any interest in it.

The defendant answered. Among the allegations contained in its answer were the following: "That, at

the time of procuring said insurance policy, the plaintiff, Public Parks Amusement Company, through its agents and officers, represented and stated to defendant that it was, subject to the said deed of trust dated September 12, 1891, the absolute and unconditional owner of all the property described and covered by said policy, which were all the horses, carriages, hacks, buggies, carts, surreys, wagons, and all other vehicles, harness, bridles, saddles, and all other property used in the livery business which was then being carried on in the city of Hot Springs, in the building known as the ' Metropolitan Stables,' and by and through such representations procured said insurance; but defendant says that the title to a large amount of said property was reserved in, and held by, others than said plaintiff, at the time of insurance, to whom plaintiff, the Public Parks Amusement Company, owed large sums of money as the purchase price for said property, which said sums had not been paid at the time of said fire, and said plaintiff had only a conditional ownership of said property where the title was so reserved, both at the time of procuring said insurance and at the time of said fire. That the said statements and representations of said plaintiff, as to the ownership of said property, were wilfully false, and the said policy was thereby rendered null and void.

"(4.) That, after procuring said policy of insurance, said plaintiff, on the 17th day of December, 1891, executed to John Loughran, as trustee, for the benefit of Edward Butler, a deed of trust on the property covered by said policy for the sum of $3,000; that said deed of trust was executed without the knowledge or consent of defendant, or its agent, and was in open and direct violation of the terms, stipulations, and conditions of said policy; that thereby the title to said property was conveyed from said plaintiff to the said Loughran, the

same was thereby incumbered, and the ownership of the same changed and altered, and the said policy was thereby rendered null and void."

The issues in the case were tried by a jury. As to the execution of the two deeds of trust mentioned in the complaint and the policy sued on, there was no controversy. In the month of November, 1891, the Public Parks Amusement Company secured insurance on the property referred to in the complaint, amounting in the aggregate to $10,000, $2,500 of which was by the Niagara Insurance Company; $2,500 was by the Caledonia Insurance Company; $2,500 was by the Phœnix Insurance Company, of Brooklyn, New York, the plaintiff; and the remainder by the Phœnix Insurance Company, of London. At the time these policies were issued, Ware & Avery were the local agents at Hot Springs, Ark., of the companies which issued them, and received from Louis Knorr, the agent of the Public Parks Amusement Company, who procured the same, notice of the existence of the first deed of trust, and made the policies payable to the beneficiary therein, Edward Butler, as his interest might appear. All these facts were proved in the trial.

Evidence was also adduced to prove the following facts: Ware & Avery were the agents of the defendant at Hot Springs. They kept policies, signed by its principal officers in blank, on hand. They had authority to solicit insurance for the defendant, and, when insurance was applied for, to fill the blanks in its policies, receive the premium for it, and countersign and issue the same. Shortly after the execution of the four policies we have mentioned, they were sent to Edward Butler, at St. Louis, Mo. When the second deed of trust was executed, the Public Parks Amusement Company, by its agent, Louis Knorr, notified Ware & Avery of the execution of the same, and that it desired to secure $3,000

additional insurance on the property already insured, and stated at the time that it wished the policies for the additional insurance written as the first, payable to Edward Butler, as his interest might appear. Ware & Avery then told Knorr to get the policy sued on, and the other three policies, in order that they might change them by making them authorize $13,000 concurrent insurance, instead of $10,000. Knorr thereupon sent a telegram to Butler, at St. Louis, to send to him the four policies, which was done. When they came, Knorr delivered them to Ware & Avery, and slips filled out and signed by Ware & Avery, in their capacity of agents, as before stated, allowing $13,000 concurrent insurance, were pasted upon each of them. The policies were then returned to Butler. After this the Public Parks Amusement Company secured the $3,000 additional insurance, $1,500 of which was by the German-American Insurance Company, and the remainder by the American Central Insurance Company. The policies of the two last mentioned companies were likewise made payable to Butler, as his interest might appear, and were delivered to him. The application for none of these policies was reduced to writing.

On the 17th of May, 1892, much of the property insured was damaged by fire, a part being totally destroyed. Two wagonettes and carts, which were a small part of the property insured and destroyed, were sold to Public Parks Amusement Company by the Embree-McLean Carriage Company conditionally, the carriage company reserving title in itself until the purchase money was paid. The title to the property was never acquired by the former company by the entire performance of the conditions of the sale. The purchase money remaining unpaid in part, the carriage company brought an action of replevin against its conditional vendee for the possession of the property sold, and the

defendant in that action gave bond to retain possession of it, and to perform the judgment of the court, and held possession until it was burned. The action was pending at the time of the trial.

During the trial in this action, an inventory of the property insured and its valuation, which had been made for Reinman & Simon, prior to the fire, when they were negotiating to buy or trade for the property, was read as evidence over the objection of the defendant. A witness testified that it shows the horses, vehicles, and rolling stock, bridles, saddles, blankets, robes, office and stable furniture, and feed on hand, belonging to the Public Parks Amusement Company on March 29, 1892; that between March 29, 1892, and the 17th day of May, 1892, the Public Parks Amusement Company shipped of said property four horses, two buggies, and two sets of harness to St. Louis, Mo., worth about $750; that this shipment was made in the month of April, 1892; and that the value of the property in the Metropolitan Stables on the night of May 17, 1892, when the fire occurred, was $22,000 or $23,000.

Upon this evidence, the court instructed the jury, at the instance of the plaintiff, over the objections of the defendant as follows :

"4. If you believe from the evidence that, at the time of the application for insurance in this case, or at any other time, Louis Knorr stated that the property insured belonged to the Public Parks Amusement Company; that, at the time he made such statement, a few of the vehicles insured were held under a contract with Embree-McLean Carriage Company, by which said Embree-McLean Carriage Company retained the title to said vehicles until all the purchase money was paid; that only a portion of the purchase money had been paid ; and that said Embree-McLean Carriage Company had instituted an action for said property ; and that said

Public Parks Amusement Company had given bond in said case to retain said property, and to perform the judgment of the court; that said action is still pending in this court; and that said Public Parks Amusement Company had the possession of said property from the time it was purchased until it was burned, then you should find that said Public Parks Amusement Company had an insurable interest in said property, and that said representation of Knorr, as to the ownership of said property, cannot be used or relied upon by the defendant in this action to defeat the claim of the plaintiff herein."

"12. The court instructs the jury that even if they should find from the evidence that a portion of the purchase money was due upon some of the buggies, that this fact does not necessarily prevent plaintiff from recovering the full value of the property insured."

And the court refused to instruct the jury, at the request of the defendant, as follows:

"5. If you find from the evidence that the Public Parks Amusement Company, after the policy sued on in this case was issued, executed a deed of trust or mortgage on the property covered by said policy for $3,000, and had failed up to the time of said fire to give defendant, or its authorized agent, written notice of such deed of trust or mortgage, and to have the assent of said company thereto endorsed on said policy, then you will find for the defendant.

"6. The fact, if it be a fact, that Louis Knorr, stated to Mr. Avery, the local agent of defendant company, when applying for additional insurance on said property in the month of February, 1892, that he had [placed] or intended to place a mortgage or deed of trust on said property, and that he wanted additional insurance on the same for that reason, will not prevent a forfeiture of said policy therefor, nor be a waiver by

defendant of its rights to rely on said mortgage or deed as a defense to this action.

"8.   The local agents of defendant at Hot Springs had no authority to waive the condition in said policy, which terminates the insurance thereunder on account of encumbrances placed on the property covered by said policy after the same was issued.

"9.   The local agents of defendant at Hot Springs could not, except by written assent endorsed on said policy, waive the condition in said policy terminating the insurance thereunder on account of an incumbrance placed on said property after said policy was issued."

Other instructions were given over the objections of the defendant, and others which it asked for were refused, which we do not deem necessary to mention in this opinion.

After the instructions were given, and the jury had retired for sometime, the inventory made for Reinman & Simon, on the 29th of March, 1892, was sent to them at their request, to be considered by them, over the defendant's objections.

The jury returned a verdict in favor of plaintiffs, upon which the court entered a judgment in their favor against the defendant for $1,662.67, and six per cent. interest on the same from 28th of July, 1892; and the defendant appealed.

The appellant denies the right of appellees to recover on the policy sued on for the reason, among others, that the Public Parks Amusement Company was not the sole and unconditional owner of all the property insured at the time of the execution of the policy, and when the fire occurred.   It bases this contention on that part of the policy which provides that "if the interest of the assured in the property be other than an unconditional, exclusive ownership, * * * or if any other person or persons have any interest whatever in the

*Validity of condition in policy.*

property described, whether it be real estate or personal property, * * * or if there be a mortgage or other incumbrance thereon, building, or contents, or any part thereof, whether inquired about or not, it must be so notified to the company, and be so expressed in the written part of this policy, otherwise the policy shall be void"; and upon the fact that a part of the property insured and destroyed by fire was held by the company, which is appellee, under a contract of conditional sale, by the terms of which it was stipulated that the title to the same should remain in the seller until the purchase money should be fully paid, and the fact that the price paid therefor was not fully paid at the time of the insurance, or when the fire occurred.

The object of the stipulation of the policy relied on "is to protect the company against taking risks on property for an amount disproportionate to the value of the interest of the insured, on which the company relies to a great extent as an incentive to use all reasonable precautions to avoid the destruction of the property." This being its purpose, it is reasonable and valid; and, as the policy does not show that the Public Parks Amusement Company did not have any interest in the property insured except the exclusive and unconditional ownership, the truth of it is a condition precedent upon which the right of the assured to recover depends. By accepting the policy with the condition in it without qualification, it affirmed that its interest in the property insured was an unconditional and exclusive ownership, and no other person had any interest in it. If this was not true, the policy is void. *Brown* v. *Commercial Fire Ins. Co.*, 86 Ala. 189; *Lasher* v. *St. Joseph Fire & Marine Ins. Co.*, 86 N. Y. 423; *Barnard* v. *National Fire Ins. Co.*, 27 Mo. App. 26; *Farmville Ins. & Banking Co.* v. *Butler*, 55 Md. 233; 1 May on Insurance, secs. 287 A, 287 B, 294 C.

The question in this case "was, not whether the assured had an insurable interest in the property, but whether that interest was sole, unconditional, and entire." The evidence adduced at the trial tended to prove that a part of the property insured and destroyed was held under the terms of a sale by which title was reserved in the seller until the purchase price should be fully paid, and that it never had been paid. If this be true, the assured did not have the unconditional and exclusive ownership of the property, and the policy is void. *Geiss.* v. *Franklin Ins. Co.*, 123 Ind. 172; *Westchester Fire Ins. Co.* v. *Weaver*, 70 Md. 538; *Lasher* v. *St. Joseph Fire & Marine Ins. Co.*, 86 N. Y. 423; *Brown* v. *Commercial Fire Ins. Co.*, 86 Ala. 189; *Garver* v. *Hawkeye Ins. Co.*, 69 Iowa, 202. The fact that the vendor instituted an action against the Public Parks Amusement Company to recover the possession of it, and that the defendant in the case had given bond to retain possession of the property, and was in possession at the time it was barred, and that the vendor could not recover without returning a part or all the purchase money paid, did not convert the interest of the defendant company into an unconditional and exclusive ownership. The Public Parks Amusement Company still held the property conditionally.

The necessity for a true statement of the interest of the Public Parks Amusement Company was not obviated by making the loss, if any, payable to Edward Butler as his interest might appear. That stipulation, at most, implied that Butler had some lien, incumbrance, or other interest in the property, which was consistent with the unconditional and exclusive ownership in the assured. A lien or incumbrance would not be inconsistent with respect to insurance. *Lasher* v. *St. Joseph Fire & Marine Ins. Co.*, 86 N. Y. 423; *Clay Fire & Marine Stock Ins. Co.* v. *Beck*, 43 Md. 358; *Manhattan*

*[margin: As to assured's title.]*

*[margin: When condition not waived.]*

*Fire Ins. Co.* v. *Weill,* 28 Gratt. 389; *Milleville Mutual Fire Ins. Co.* v. *Wilgus*, 88 Pa. St. 107, 110; 1 May, Insurance, sec. 287 C.

**Contract held indivisible.**    The contract of insurance was entire and indivisible. Being void as to a part of the property insured, it is void as to all. It was all exposed to one risk, and the consideration for the policy was a specified sum. The fact that separate amounts of insurance were apportioned to separate items or classes of property did not make the policy divisible. The contract and risk being indivisible, the contract is entire, and any breach which renders it void as to a part of the property affects it in the same manner as to the remainder. *McQueeny* v. *Ins. Co.*, 52 Ark. 257; *Havens* v. *Home Ins. Co.*, 111 Ind. 90; *Geiss* v. *Franklin Ins. Co.*, 123 Ind. 172.

**Authority of insurance agent.**    Appellant contends that the policy was forfeited by the execution of the deed of trust to John Loughran on the 17th of December, 1891; and appellees insist that the forfeiture was waived. In support of the contention of appellees, the evidence adduced at the trial tended to prove that Ware & Avery were the agents of the appellant company at Hot Springs; that they kept policies of the appellant on hand, signed by its principal officers in blank; that they had power and authority to solicit insurance for appellant, and, when such was obtained, to fill the blanks in the policies, receive the premium, and countersign and issue the same. If this be true, it would be within the apparent scope of their authority to waive the condition as to the incumbrance of December 17, 1891. *German-American Insurance Co.* v. *Humphrey*, 62 Ark. 348, 35 S. W. Rep. 428; *Insurance Co.* v. *Brodie*, 52 Ark. 11. They were not deprived of the authority to do so by the policy. It is true that the policy says that no agent or representative of appellant (excepting only the principal officers of the company at New York and its general agent at Chicago), shall have

any power to waive or in any manner modify any of its provisions or conditions, but it expressly excepts "such as by the terms of the policy may be the subject of agreement indorsed thereon or added thereto." The authority to waive them was not limited to its principal officers and its general agent at Chicago. The policy provides that "when the property insured shall be sold or incumbered, * * written notice shall be given to the company of such sale or incumbrance, * * and its assent thereto indorsed thereon." This assent then comes within the authority of Ware & Avery, and they could give it without the written notice or indorsement. *German-American Ins. Co.* v. *Humphrey*, *supra*. But did they do so? The evidence adduced tended to prove that they did. Notice of the incumbrance was given to them. Additional concurrent insurance was requested for the purpose of indemnifying Butler, who held the incumbrance, against loss by fire. The policy sued on was delivered to them for the purpose of granting the same, which was done by pasting on the policy strips filled out and signed by them, such strips having been furnished by the company for that purpose; and the additional insurance was secured on the implied assurance that the policy sued on would still be treated as valid. If this be true, the condition was waived. *German Ins. Co.* v. *Gibson*, 53 Ark. 494; *Ring* v. *Windsor Co. Mut. Ins. Co.*, 54 Vt. 434; *Mutual Life Ins. Co.* v. *French*, 30 Ohio St. 240; *Potter* v. *Ontario & Livingston Mutual Ins. Co.*, 5 Hill, 147; *Haas* v. *Montauk Fire Ins. Co.*, 49 Hun, 272.

*Waiver of forfeiture.*

The inventory prepared for Reinman & Simon on the 29th of March, 1892, should not have been read as evidence. It was not admissible to prove any fact to which the witness could testify from his recollection, or as independent evidence. But it could have been used to refresh the memory of the witness; and if, upon

*Admissibility of memorandum in evidence.*

examining it, he was unable to remember what it contains, but knew its contents to be true, he might have so testified, and then read them to the jury, and in that way the facts stated in it might have been proved.. In that manner it could have been received and considered by the jury as any other evidence. *Woodruff* v. *State*, 61 Ark. 157; *Insurance Companies* v. *Weides*, 14 Wall. 375; 1 Greenleaf Ev., secs. 436, 437, 440. As to the admissibility of the jury taking papers to their rooms, see *Hickman* v. *Ford*, 43 Ark. 207.

Interest recoverable.

As, by the terms of the policy, the amount of the insurance was payable sixty days after the receipt of proof of loss at the office of the appellant in Chicago, the interest on the sum due on the policy, if any, should be computed from the expiration of that time. *Southern Ins. Co.* v. *White*, 58 Ark. 277.

For the errors in giving the instructions specified over the objections of appellant, and admitting incompetent evidence, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.